**Glenn W. PHELPS, Jr., Plaintiff,**

v.

**Robert M. COY, Jr., et al., Defendants.**

**No. C–3–98–369.**

United States District Court,
S.D. Ohio,
Western Division.

Sept. 15, 2000.

David Michael Deutsch, David M. Deutsch Co., LPA, Dayton, OH, for Glenn W. Phelps, Jr.

Neil Frank Freund, Freund Freeze & Arnold, Dayton, OH, Lynnette Pisone Ballato, Law Office of Nicholas E. Subashi, Dayton, OH, for Eric Prindle, City of Xenia, Lee G. Esprit, Jr., Larry Gordon, John T. Saraga, Dr. Eric Winston, Max Sims, Robert Stilwell, Everett Ross.

Lawrence Edward Barbiere, Schroeder Maundrell Barbiere & Powers, Cincinnati,

OH, for Robert M. Coy, Jr., Christin Stutes.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS COY AND STUTES (DOC. # 71); DECISION AND ENTRY OVERRULING, AS MOOT, XENIA DEFENDANTS' MOTION TO COMPEL DISCOVERY (DOC. # 77); DECISION AND ENTRY SUSTAINING XENIA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 78); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING, AS MOOT IN PART, XENIA DEFENDANTS' MOTION TO STRIKE (DOC. # 84); DECISION AND ENTRY OVERRULING XENIA DEFENDANTS' MOTION TO STRIKE SUPPLEMENTAL AFFIDAVIT (DOC. # 89)

RICE, Chief Judge.

This litigation arises out of incidents which occurred on August 30, 1997.[1] On that date, Defendants Robert M. Coy, Jr. ("Coy") and Christin Stutes ("Stutes"), who were then employed by the Police Department for the City of Xenia, Ohio ("Xenia"), as, respectively, a Sergeant and an Officer, arrested the Plaintiff for violating Xenia's open container ordinance.[2] After being arrested, the Plaintiff was placed in handcuffs and transported to the Xenia Police Station.

At that facility, Stutes processed the Plaintiff, asking him routine questions as part of the booking function. Plaintiff remained handcuffed throughout. Stutes asked the Plaintiff to remove his shoes and socks, in order for that officer to ascertain whether he had hidden drugs in his feet. Stutes also instructed the Plaintiff to lift his feet. As the handcuffed Plaintiff was complying with that directive, one of his feet got close to Stutes' face. Stutes was able to grab the offending foot and push it away. Coy, seeing the Plaintiff's action and interpreting it as an attempt to kick Stutes, tackled the Plaintiff, which caused them both to fall to the ground, with Coy on landing top of the Plaintiff. As he was on top of Plaintiff and, while telling him not to attempt to kick one of his officers, Coy struck the Plaintiff in the face twice and, then, grabbed his shirt and slammed his head into the ground at least three times. As the confrontation between Coy and Plaintiff was occurring, Tawfiq Jabbar ("Jabbar"), another person, who had been arrested and was in the Police Station, got out of his chair in which he was sitting and started to walk toward the altercation, causing Stutes to shift his attention to Jabbar. As a result, Stutes did not attempt to intervene to stop Coy's actions. By the time that Stutes' attention refocused upon the altercation between Coy and Plaintiff, Coy was telling the Plaintiff to calm down and proceeding to help him to his feet.

Danny O'Malley, who was then Chief of Police for Xenia, immediately launched an investigation into the events that had occurred on August 30th. The result of that investigation was that Coy was fired from his position with the Xenia Police Department the following month.[3] Shortly there-

---

1. Since this case is before the Court on the Defendants' motions requesting summary judgment, the Court sets forth the facts and circumstances giving rise to this litigation in the manner most favorable to the Plaintiff.

2. Plaintiff was also charged with resisting arrest, as a result of events which occurred during his arrest. All charges against the Plaintiff were subsequently dismissed.

3. There is no evidence that Stutes was disciplined in any manner for the events which

after, Judge Susan Goldie of the Xenia Municipal Court hired Coy as a bailiff.

In his Complaint (Doc. # 1), the Plaintiff sets forth claims against Stutes, Coy, Xenia, Eric Prindle ("Prindle") and the City Commissioners of Xenia.[4] For sake of convenience, the Court, throughout this Decision, refers to Xenia, Prindle and the City Commissioners of Xenia collectively as the "Xenia Defendants." With his First Claim for Relief, the Plaintiff has set forth a claim under 42 U.S.C. § 1983, against all Defendants, alleging that his rights under the Fourth and Fourteenth Amendments were violated by the use of excessive force. With his Second Claim for Relief, the Plaintiff has set forth a state, common law claim of assault and battery against Coy and Xenia. With his Third Claim for Relief, Plaintiff sets forth an alternative theory for imposing liability on Xenia, under § 1983, for the actions of Coy, alleging that the municipality ratified those actions, given that Judge Goldie hired him shortly after he had been fired.[5] With his Fifth Claim for Relief, Plaintiff sets forth a state, common law claim of false arrest against Coy, Stutes and Xenia.[6] With his Eighth Claim for Relief, Plaintiff alleges that a provision in Ohio's Governmental Tort Immunity Act, Ohio Revised Code § 2744.02(B), is unconstitutional, because it arbitrarily distinguishes between governmental and proprietary functions.[7]

This case is now before the Court on the following motions, to wit: the Motion for Summary Judgment of Coy and Stutes (Doc. # 71); the Xenia Defendants' Motion to Compel Discovery (Doc. # 77); the Xenia Defendants' Motion for Summary Judgment (Doc. # 78); the Xenia Defendants' Motion to Strike (Doc. # 84); and the Xenia Defendants' Motion to Strike Supplemental Affidavit (Doc. # 89). As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, following which it will rule upon the Xenia Defendants' Motion to Strike (Doc. # 84) and Motion to Strike Supplemental Affidavit (Doc. # 89). The Court will then will turn to the two motions seeking summary judgment, discussing them in the above order. If the Court overrules the Xenia Defendants' Motion for Summary Judgment (Doc. # 78), it will rule upon their Motion to Compel Discovery (Doc. # 77).[8] If, however, the Court concludes that the Xenia Defendants are entitled to summary judgment, it will overrule their Motion to Compel Discovery (Doc. # 77), as moot.

had occurred on August 30th.

4. The Plaintiff has sued the City Commissioners solely in their official capacity.

5. With his Fourth, Sixth and Seventh Claims for Relief, Plaintiff alleges, respectively, that Ohio Revised Code §§ 2323.54, 2315.18, 2315.21 and 2307.31 violate provisions in the Ohio Constitution. Those statutes were either enacted or amended as part of Ohio's short-lived Tort Reform Act, House Bill 350. In *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999), the Ohio Supreme Court concluded that the Tort Reform Act violated the Ohio Constitution. As a result of that decision, this Court will not apply the versions of §§ 2323.54, 2315 .18, 2315.21 and 2307.31, either added or amended by the Tort Reform Act. Therefore, the Plaintiff's Fourth, Sixth and Seventh Claims for Relief are moot.

6. It bears emphasis that the Plaintiff has not set forth a claim under § 1983, alleging that he was arrested without probable cause in violation of the Fourth Amendment.

7. The Plaintiff does not specify which provision of what constitution (i.e., federal or state) is violated by that legislation.

8. With that motion, the Xenia Defendants seek an order from the Court, requiring the Plaintiff to provide certain information relating to his use of controlled substances. That evidence has no bearing on the pending motions for summary judgment.

*I. Standards Applicable to Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255,

106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment....."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. Xenia Defendants' Motion to Strike (Doc. # 84) and Xenia Defendants' Motion to Strike Supplemental Affidavit (Doc. # 89)

With their Motion for Summary Judgment (Doc. # 78), the Xenia Defendants argue, *inter alia*, that, in accordance with *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny, liability cannot be imposed upon Xenia for any constitutional tort committed by employees of Xenia. To demonstrate that there is a genuine issue of material fact as to *Monell* liability, the Plaintiff has submitted an affidavit from his expert witness, R. Paul McCauley ("McCauley"). With their Motion to Strike (Doc. # 84), the Xenia Defendants request that the Court strike ¶¶ 2–10 of that affidavit.[9] The Xenia Defendants point out that McCauley failed to identify the evidentiary materials that he reviewed in order to form his opinions. Additionally, those Defendants argue that ¶¶ 2–10 of McCauley's affidavit must be stricken, because they contain nothing more than conclusory opinions, without

---

9. The Xenia Defendants have also requested that the Court strike Exhibit D to Plaintiff's Memorandum in Opposition to the Xenia Defendants' Motion for Summary Judgment (Doc. # 82). That Exhibit is an unauthenticated document, purportedly prepared by the Xenia Public Schools, which indicates that the Plaintiff is a slow learner. The Xenia Defendants argue that Exhibit D must be stricken, because it has not been authenticated and contains inadmissible hearsay. Plaintiff has not responded to the Xenia Defendants' request that the Court strike that Exhibit. Without addressing the question of whether the document constitutes inadmissible hearsay, the Court concludes that Exhibit D must be stricken, because it has not been authenti-cated. Rule 56(e) requires that sworn or certified copies of all papers be attached to an affidavit. Thus, to be considered in a summary judgment proceeding, an exhibit must be authenticated. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722. Since the Plaintiff has not authenticated the document, this Court cannot consider it when ruling upon the Xenia Defendants' Motion for Summary Judgment (Doc. # 78). Accordingly, the Court sustains the Xenia Defendants' Motion to Strike (Doc. # 84), to the extent that, with that motion, they request that the Court strike Exhibit D to the Plaintiff's Memorandum in Opposition to the Xenia Defendants' Motion for Summary Judgment (Doc. # 82).

setting forth the bases for those opinions. In response to the Xenia Defendants' Motion to Strike (Doc. # 84), the Plaintiff has submitted a supplemental affidavit from McCauley. *See* Doc. # 87. That supplemental affidavit adds a new ¶ 2, in which McCauley identifies the materials that he reviewed in order to prepare that affidavit, and adds flesh to one of the paragraphs in his initial affidavit, which the Xenia Defendants have argued is too conclusory.[10] The submission of McCauley's supplemental affidavit has caused the Xenia Defendants to file their Motion to Strike Supplemental Affidavit (Doc. # 89). Therein, the Xenia Defendants argue that the Court should disregard McCauley's supplemental affidavit, since it was not submitted in a timely fashion. Alternatively, those Defendants contend that the additions contained in McCauley's supplemental affidavit do not cure the defects in his initial such. The Plaintiff has not responded to the Xenia Defendants' Motion to Strike Supplemental Affidavit (Doc. # 89).

Given that McCauley's two affidavits are virtually identical, the only difference being that the supplemental version contains additional text, it is apparent that the Plaintiff intends the supplemental affidavit to supersede the first. Therefore, the Court will initially address the Xenia Defendants' argument that the supplemental affidavit must be stricken, because it was untimely. If the Court rejects that argument, it will focus exclusively upon the supplemental affidavit, when deciding whether the evidence raises a genuine issue of material fact. Under that circumstance, the Court will also overrule, as moot, the branch of the Xenia Defendants' Motion to Strike (Doc. # 84), with which they challenge McCauley's initial affidavit, and consider the arguments contained in that motion, when it rules upon the alternative argument in their Motion to Strike Supplemental Affidavit (Doc. # 89), i.e., that McCauley's second affidavit did not cure the deficiencies contained in his first.

The Xenia Defendants point out that, although they filed their Motion for Summary Judgment (Doc. # 78) on November 30, 1999, the Court gave the Plaintiff an extension of time until January 13, 2000, in which to file a memorandum in opposition. That period of time, the Xenia Defendants submit, was adequate for Plaintiff to be able to file his evidence in opposition to their motion. Therefore, the Xenia Defendants argue that the Plaintiff should not be permitted to supplement McCauley's fatally deficient affidavit. Although the Xenia Defendants assert in most conclusory fashion that they have been prejudiced by the supplementation of McCauley's affidavit, this Court is unable to discern how that could have occurred. The Xenia Defendants have argued that the additions to McCauley's affidavit have not cured the deficiencies they pointed out in their Motion to Strike (Doc. # 84) and that the supplemental affidavit fails to raise a genuine issue of material fact. *See*

---

10. In ¶ 4 of his initial affidavit, McCauley indicated that it was vitally important that law enforcement agencies have ethical codes of conduct, indicating that it is not only permitted but also expected that an officer will intervene when another officer, regardless of rank, is violating the constitutional rights of a citizen. In addition, McCauley states that it is vital that officers be trained on that expected conduct and that they be disciplined for failing to follow that expectation. In concluding that paragraph, he states that the Xenia Police Department "failed to do these things." Paragraph 5 of McCauley's supplemental affidavit contains identical language to that in ¶ 4 of his initial affidavit; however, ¶ 5 also includes a newly added final sentence, wherein he states that the Xenia Police Department has a policy or custom of failing to supervise, to control and to train its officers to respond to the use of excessive force by a fellow officer, since Stutes failed to intervene to stop the use of excessive force by Coy.

Doc. # 88. In the absence of a showing that the Xenia Defendants have suffered unfair prejudice, as a result of the filing of McCauley's supplemental affidavit, this Court will not strike that document. Consequently, this Court overrules, as moot, the branch of the Xenia Defendants' Motion to Strike (Doc. # 84), with which they challenge ¶¶ 2–10 of McCauley's initial affidavit. However, as is indicated above, the Court will consider the arguments set forth in that motion, when deciding whether to strike the supplemental affidavit.

■ In *Monks v. General Electric Co.*, 919 F.2d 1189 (6th Cir.1990), the Sixth Circuit addressed the propriety of striking an affidavit from an expert witness, which had been submitted to oppose a motion for summary judgment. Therein, the District Court struck the affidavit from the plaintiff's expert, since it failed to set forth the bases of the opinions contained therein. Upon appeal, the Sixth Circuit concluded that the District Court had erred in striking the affidavit, but that its error was harmless, since the affidavit, when considered, did not raise a genuine issue of material fact. The Sixth Circuit stressed that the issue of whether a District Court should strike an affidavit is distinct from the question of whether the information contained in the affidavit, if not stricken, is sufficient to raise a genuine issue of material fact and, thus, to permit a party to withstand a summary judgment motion. *Id.* at 1192–93. *Accord, Ambrosini v. Labarraque*, 966 F.2d 1464, 1470 (D.C.Cir. 1992) (and cases cited therein). Thus, in *Monks*, the Sixth Circuit held that the District Court should have considered the expert's affidavit, despite his failure to set forth the bases for the opinions, and concluded that the information therein did not raise a genuine issue of material fact. In accordance with *Monks*, this Court will decline to strike McCauley's supplemental affidavit. Rather, the Court will consider the Xenia Defendants' challenges to that affidavit, when deciding whether it raises a genuine issue of material fact on the Plaintiff's *Monell* claim against Xenia.

Accordingly, the Court overrules the Xenia Defendants' Motion to Strike Supplemental Affidavit (Doc. # 89).

### III. Motion for Summary Judgment of Defendants Coy and Stutes (Doc. # 71)

The Plaintiff's § 1983 claim against Coy is predicated upon the allegation that he used excessive force, in violation of the Fourth and/or Fourteenth Amendments, by tackling Plaintiff, striking him in the face twice and repeatedly slamming his head against the floor at the Xenia Police Station. Plaintiff contends that liability can be imposed upon Stutes, because he did not intervene to prevent the constitutional violation by his fellow officer. With their Motion for Summary Judgment, Coy and Stutes argue that they are entitled to summary judgment on Plaintiff's § 1983 claim against them, on the basis of the doctrine of qualified immunity. Those Defendants have not moved for summary judgment on the Plaintiff's state law claims against them. As a means of analysis, the Court will initially review the standards which govern that doctrine, following which it will discuss the parties' arguments in support of and in opposition to the request for summary judgment by Coy and Stutes.

■ In *Estate of Dietrich v. Burrows*, 167 F.3d 1007 (6th Cir.1999), the Sixth Circuit restated the principles that courts employ to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity:

As a general principle, "government officials performing discretionary functions enjoy qualified immunity from liability for performance of their official duties." [*Thomas v. Whalen*, 51 F.3d

1285, 1289 (6th Cir.1995) ]. Whether such an official may nevertheless be held personally liable for an allegedly unlawful action involves an inquiry into the "objective legal reasonableness" of the action. *See Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If the constitutional right "the government official allegedly violated was clearly established at the time of the challenged conduct, 'the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.'" *Thomas,* 51 F.3d at 1289 (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727).

When determining whether a right is "clearly established," we look "first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Daugherty v. Campbell,* 935 F.2d 780, 784 (6th Cir. 1991). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the Supreme Court explained, however, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted).

*Id.* at 1012. In *Pouillon v. City of Owosso,* 206 F.3d 711, 714 (6th Cir.2000), the Sixth Circuit wrote that " '[w]here ... the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.' *Sova v. City of Mount Pleasant,* 142 F.3d 898, 903 (6th Cir.1998)." *See also, Pray v. City of Sandusky,* 49 F.3d 1154, 1161 (6th Cir.1995) (noting that summary judgment on the basis of qualified immunity "is not appropriate if there are factual disputes involving an issue on which the question of immunity turns, 'such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.' *Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989)"); *Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir.1989) (noting that many times "the jury becomes the final arbiter of [defendant's] claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury"). In *Kain v. Nesbitt,* 156 F.3d 669 (6th Cir.1998), the Sixth Circuit explained the nature of a defendant's request for summary judgment on the basis of qualified immunity:

When making a qualified immunity analysis, it is important to remember that the defendant is, in essence, saying: "If the plaintiff's version is credited, what I did, judged today, *arguendo* would be wrongful, but at the time I acted, no reasonable officer would have known he was acting wrongfully." *See Berryman v. Rieger,* 150 F.3d 561, 562 (6th Cir.1998) ("the defendant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case").

*Id.* at 671–72. A court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). With that framework in mind, the Court turns to the question of whether either officer is entitled to summary judgment on the basis of

qualified immunity, discussing Coy before turning to Stutes.

In accordance with *Wilson*, this Court must first decide whether the evidence raises a genuine issue of material fact concerning Plaintiff's claim that Coy's actions constituted a violation of his constitutional right to be free from excessive force. To resolve that question, the Court must initially determine whether the Plaintiff's claim must be analyzed under the Fourth or Fourteenth Amendment. Coy and Stutes have analyzed that claim under the Fourth Amendment,[11] while the Plaintiff argues, in the alternative, that those actions violated either the Fourth *or* the Fourteenth Amendment. For reasons which follow, this Court concludes that the Plaintiff's claim of excessive force arises under the Fourth Amendment and must be analyzed thereunder.

 In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the United States Supreme Court rejected the argument that one generic standard was applicable to all constitutional claims arising out of the alleged use of excessive force. *Id.* at 393, 109 S.Ct. 1865. Rather, the *Graham* Court held that held that, in addressing a claim of excessive force, a court must initially identify the precise constitutional provision that was allegedly infringed. *Id.* at 394, 109 S.Ct. 1865. The Supreme Court held further that all claims of the unconstitutional use of excessive force, arising out of the seizure of an individual, are to be analyzed under the objective reasonableness standard of Fourth Amendment. The *Graham* Court wrote:

Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today. It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. See *Bell v. Wolfish*, 441 U.S. 520, 535–539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). After conviction, the Eighth Amendment "serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. [312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ].

*Id.* at 395 n. 10, 109 S.Ct. 1865. Thus, if the Plaintiff were a pretrial detainee, when Coy allegedly used excessive force upon him, the Fourteenth Amendment would govern that claim, while the Fourth Amendment is applicable if Coy's actions occurred during the course of an arrest. In *McDowell v. Rogers*, 863 F.2d 1302 (6th Cir.1988), the Sixth Circuit addressed the issue of when a seizure ends and pretrial detention begins, for purposes of deciding which constitutional provision governs a claim of excessive force. Therein, after the plaintiff had unsuccessfully attempted to cash stolen checks at a grocery store, he got into an altercation with the security guard at that store, following which he exited quickly. The security guard gave chase and was soon joined by a police

---

11. In their Reply Memorandum, Coy and Stutes suggest that the Plaintiff's excessive force claim should be resolved under the Cruel and Unusual Punishments Clause of the Eighth Amendment. This Court cannot agree. That constitutional provision is applicable only after an individual has been con- victed. *See e.g., Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Since the Plaintiff had not been convicted, before the incident giving rise to this litigation, the Eighth Amendment is inapplicable.

officer, Officer Rogers, who caught and arrested the plaintiff. Officer Rogers placed the plaintiff in handcuffs, and he, the security guard and the plaintiff began walking back to the store. Before they had arrived at their destination, another officer, Officer Ross, drove by in his police cruiser. The plaintiff was placed in that vehicle and driven back to the store. When Officer Rogers arrived at that location, the plaintiff was taken out of that vehicle, so that Officer Rogers' handcuffs could be replaced with those of Officer Ross. The latter officer accomplished that task without incident. According to the plaintiff, as he was being put back in the police cruiser, Officer Ross beat him with his nightstick. The Sixth Circuit concluded that the plaintiff's claim of excessive force against that officer had to be analyzed under the Fourth Amendment, writing "the seizure which occurs when a person is arrested continues throughout the time the person remains in the custody of the arresting officers. *Robins v. Harum*, 773 F.2d 1004, 1010 (9th Cir.1985)." 863 F.2d at 1306. Herein, the Plaintiff had been arrested by Stutes and Coy and remained in their custody in the booking area of the Xenia Police Station, when Coy allegedly used excessive force on him. Therefore, in accordance with *McDowell*, this Court will apply the standards of the Fourth Amendment, when assessing the Plaintiff's § 1983 claim of excessive force in this litigation.

In *Graham*, the Supreme Court explained the contours of an excessive force claim under the Fourth Amendment:

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the $^{20}\!/_{20}$ vision of hindsight. See *Terry v. Ohio*, 392 U.S. [1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ]. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong per-

son is arrested, *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), nor by the mistaken execution of a valid search warrant on the wrong premises, *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d [1028, 1033 (2nd Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) ], violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See *Scott v. United States*, 436 U.S. 128, 137–139, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); see also *Terry v. Ohio, supra*, 392 U.S., at 21, 88 S.Ct. 1868 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. See *Scott v. United States, supra*, 436 U.S. at 138, 98 S.Ct. 1717, citing *United States v. Robinson*, 414

U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

490 U.S. at 396–97, 109 S.Ct. 1865.

 Herein, it bears emphasis that, when determining whether the evidence raises a genuine issue of material fact as to whether Coy used excessive force, under the standards established in *Graham,* this Court must construe the evidence in the manner most favorable to Plaintiff, the party against whom summary judgment is sought. So construing the evidence, this Court is compelled to conclude that there is a genuine issue of material fact. At Stutes' request, the Plaintiff raised one of his feet, so that the officer could ensure that drugs were not hidden on the bottom of that foot. The Plaintiff's foot came close to Stutes'˙ face, and the officer grabbed it and pushed it away. Coy interpreted the Plaintiff's actions in that regard as an attempt to kick Stutes and tackled the Plaintiff, who was standing handcuffed at the time. As the two fell to the ground, with Coy on top of the Plaintiff, Coy told the Plaintiff that he would not permit him to kick one of his officers, and struck him in the face twice. While holding the Plaintiff's shirt collar, Coy proceeded to slam his head into the floor at least three times. Although Coy argues that he was required to use that force to gain control of the Plaintiff, a jury could find otherwise. Coy was on top of the Plaintiff, who was handcuffed when the incident occurred. There is no evidence that, while in that position, the Plaintiff presented a threat to Coy or to any other officer.

 The second and final question presented by a claim of qualified immunity is whether the right in question has been clearly established. The Sixth Circuit has repeatedly indicated that the right to be free from the use of excessive force in the context of a seizure is clearly established. *See e.g., Adams v. Metiva,* 31 F.3d 375, 386–87 (6th Cir.1994).

Accordingly, the Court overrules the Motion for Summary Judgment of Coy and Stutes (Doc. # 71), to the extent that, with that motion, Coy seeks summary judgment on Plaintiff's § 1983 claim, alleging that the use of excessive force violated the Fourth Amendment.

 Although there is no evidence that Stutes used excessive force, Plaintiff argues that liability can be imposed upon that officer, because he failed to prevent Coy from using such force. The Sixth Circuit has held that an officer, who has not personally violated an individual's constitutional rights by using excessive force, can be held liable, if he fails to intervene to prevent a fellow officer from committing a constitutional deprivation through the use of excessive force. *See* e.g., *Turner v. Scott,* 119 F.3d 425 (6th Cir.1997); *Durham v. Nu'Man,* 97 F.3d 862 (6th Cir. 1996), *cert. denied,* 520 U.S. 1157, 117 S.Ct. 1337, 137 L.Ed.2d 496 (1997). In *Turner,* the Sixth Circuit indicated that such liability could be imposed, only if, *inter alia,* the officer had both the means and the opportunity to prevent the harm from occurring. 119 F.3d at 429. Herein, the evidence does not raise a genuine issue of material fact as to whether Stutes had the opportunity to intervene, in order to stop Coy's actions. Stutes' attention had been diverted by Jabbar, who at the pertinent time had gotten out of his chair in which he had been sitting and had started to walk toward the altercation. By the time that Stutes' attention refocused upon the altercation between Coy and Plaintiff, Coy was telling the Plaintiff to calm down and proceeding to help him to his feet.

Accordingly, the Court sustains the Motion for Summary Judgment of Coy and Stutes (Doc. # 71), to the extent that, with that motion, Stutes seeks summary judgment on Plaintiff's § 1983 claim, alleging that he can be held liable for failing to

prevent Coy from using excessive force in violation of the Fourth Amendment.

### IV. Xenia Defendants' Motion for Summary Judgment (Doc. # 78)

With this motion, Xenia initially argues that it is entitled to summary judgment on Plaintiff's § 1983 claims against it, because Coy and Stutes did not violate his constitutional rights.[12] It is axiomatic that liability under § 1983 cannot be imposed upon a municipal employer, such as Xenia, unless one of its employees has committed a constitutional tort. *See Scott v. Clay County, Tennessee,* 205 F.3d 867, 879 (6th Cir.2000) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). Given that this Court has concluded that Stutes is entitled to summary judgment on the Plaintiff's § 1983 claim against him, Xenia is also entitled to summary judgment, to the extent that the Plaintiff claims liability upon that municipality for Stutes' deprivations of his constitutional rights. However, since the existence of genuine issues of material fact have prevented this Court from concluding that Coy is entitled to summary judgment, the Court rejects Xenia's argument that it is entitled to summary judgment on the Plaintiff's § 1983 claim, because Coy did not violate his constitutional rights.

In order for liability to be imposed upon a governmental employer, the constitutional tort of its employee must have been caused by a policy or custom of the governmental employer. *See Monell v. New York City Dept. of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Berry v. City of Detroit,* 25 F.3d 1342 (6th Cir.1994), *cert. denied,* 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995), the Sixth Circuit reviewed the holding of the Supreme Court in that case:

> Any discussion of municipal liability under § 1983 begins with *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell,* the Supreme Court held that municipalities can be sued directly under § 1983 where the action of the municipality itself can be said to have caused the harm, as when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. 2018. Municipal liability for the actions of employees may not be based on a theory of *respondeat superior.* *Monell* went on to clarify that municipal liability may be predicated upon grounds other than explicit expressions of official policy:
>
> > Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every

---

12. The City Commissioners, who have been sued in their official capacities, argue that they are entitled to summary judgment, since the claims against them are nothing more than claims against Xenia. Plaintiff has not responded to that request, and the Court agrees. It is well-settled that a claim against an officer or employee of a governmental entity, in his or her official capacity, is a claim against the governmental entity itself. *See e.g., Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, the Plaintiff's claims against the City Commissioners merely restate his claims against Xenia. Since that municipality is a Defendant in this litigation, the Court sustains the Xenia Defendants' Motion for Summary Judgment (Doc. # 78), to the extent that, with that motion, the City Commissioners seek summary judgment. *Accord, E.J. v. Hamilton County, Ohio,* 707 F.Supp. 314, 318–19 (S.D.Ohio 1989) (dismissing official capacity claims against county commissioners, because county was a defendant).

other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Id.* at 690–91, 98 S.Ct. 2018.

*Id.* at 1345. In *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court noted that "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479–80, 106 S.Ct. 1292.

 Based upon *Monell* and its progeny, Xenia argues that it is entitled to summary judgment on Plaintiff's § 1983 claims, because the evidence does not raise a genuine issue of material fact as to whether it has a policy or custom that officers should use excessive force to seize suspects. The Plaintiff has not responded to that argument.[13] The evidence supplied by Xenia in support of its request for summary judgment demonstrates that there is no genuine issue of material fact on this question. When Coy allegedly used excessive force on Plaintiff, Xenia had an express policy which limited the use of force by officers when it was necessary to defend themselves or others, to overcome resistance to an arrest or to prevent an escape. Indeed, Coy was fired by Xenia for violating that policy. Moreover, the evidence established that Coy received training in the use of force, both when he was initially hired as an officer and periodically throughout his employment.

The Plaintiff does argue, however, that liability can be imposed on Xenia for the actions of Coy, because Judge Goldie hired him as a bailiff, after he had been discharged as a police officer. For reasons which follow, this Court concludes that the decision of Judge Goldie to hire Coy cannot serve as the basis for imposing liability upon Xenia for the actions of Coy. Under Ohio law, a municipal court judge has the authority to appoint bailiffs. Ohio Rev. Code § 1910.32(A)(2). In her affidavit, Judge Goldie has confirmed that she made the decision to hire Coy, without input from Xenia, its officers or employees. Moreover, a municipal court is a creature of the state rather than the municipality in which it is located. *See Foster v. Walsh,* 864 F.2d 416, 418–19 (6th Cir.1988) ("The Akron Municipal Court is part of the Ohio state court system, established by the Ohio state legislature. Ohio Rev.Code § 1901.01. It is subject to the supervision of the Ohio Supreme Court. Ohio Const., Art. IV, § 5. The municipal court may not be abolished by the city council, nor may the council expand or restrict the court's jurisdiction.").[14] *See also, Mumford v. Ba-*

---

**13.** The Plaintiff does argue that the evidence raises a genuine issue of material fact as to whether Xenia has a policy or custom of failing to train officers with respect to their obligation to intervene to prevent a fellow officer from using excessive force. Thus, according to the Plaintiff, Xenia can be held liable, under *Monell* and its progeny, for Stutes' failure to intervene to prevent Coy from using excessive force. To support that argument, Plaintiff has submitted McCauley's two affidavits. The Xenia Defendants have moved to strike those affidavits (*see* Docs. #84 and #89), motions which this Court has addressed above. In addition, the Xenia Defendants take the position that the evidence does not raise such an issue of fact. Given that this Court has concluded above that Stutes cannot be held liable for failing to intervene to stop Coy's use of excessive force, this Court finds it unnecessary to address the parties' arguments as to whether liability can be imposed on Xenia for Stutes' actions, including their arguments pertaining to McCauley's supplemental affidavit. *See Scott v. Clay County, supra.*

**14.** Section 1901.02 of the Ohio Revised Code defines the territorial jurisdictions of the various Municipal Courts in Ohio, including the

*sinski,* 105 F.3d 264, 268–270 (6th Cir. 1997) (holding that Domestic Relations Division of Lorain County Common Pleas Court is an arm of the state, rather than of Lorain County). In *Sampson v. City of Xenia,* 108 F.Supp.2d 821 (S.D.Ohio 1999), this Court held that the City of Xenia could not be held liable for an alleged constitutional deprivation committed by a clerk of the Xenia Municipal Court, since that court was not an arm of the municipality. *See also, Mace v. City of Akron,* 989 F.Supp. 949, 956–957 (N.D.Ohio 1998) (recognizing that "municipal courts, not municipalities, retain the authority to make policy decisions concerning court employees"). Since the Xenia Municipal Court is not an arm of the City of Xenia, and, further, given that Judge Goldie exercised her statutory authority to hire Coy, this Court concludes that the actions of that judicial officer in that regard do not serve as the basis for imposing liability upon Xenia for the alleged use of excessive force by Coy.

Accordingly, the Court sustains the Xenia Defendants' Motion for Summary Judgment (Doc. # 78), to the extent that, with that motion, Xenia seeks summary judgment on the Plaintiff's § 1983 claims, with which he seeks to impose liability upon it for the actions of Coy.

 Prindle, who was a Lieutenant in the Xenia Police Department at the time the incidents giving rise to this litigation occurred,[15] argues that he is entitled to summary judgment on the Plaintiff's § 1983 claim. This Court agrees. Plaintiff contends that liability can be imposed upon Prindle, because he failed to supervise Coy and Stutes. In *Shehee v. Luttrell,* 199 F.3d 295 (6th Cir.1999), *cert. denied,* 530 U.S. 1264, 120 S.Ct. 2724, 147 L.Ed.2d 988 (2000), the Sixth Circuit restated the standards under which liability can be imposed on a supervisor, under § 1983, for the constitutional tort committed by an employee under his supervision:

> a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Id.* at 300 (quoting *Hays v. Jefferson County, Kentucky,* 668 F.2d 869, 874 (6th Cir.1982)). Herein, there is simply no evidence that Prindle encouraged or in some other manner directly participated in the use of excessive force by Coy.[16] In addition, although Prindle was not responsible for disciplining Coy for his actions, he did participate in the internal investigation, the result of which was that Coy was fired. Accordingly, the Court sustains the Xenia Defendants' Motion for Summary Judgment (Doc. # 78), to the extent that, with that motion, Prindle seeks summary judgment on the Plaintiff's § 1983 claim.

 Xenia also argues that it is entitled to summary judgment on the Plaintiff's state law claims, because it is immune under state law. This Court agrees. Under Ohio Revised Code § 2744.02(B), a

---

Xenia Municipal Court, which includes ten Townships within Greene County. Thus, the Xenia Municipal Court is not coextensive with the territorial limits of the municipality in which it is located.

**15.** Prindle is currently the Chief of Police for Xenia; however, that position was occupied by Danny O'Malley when the incidents giving rise to this litigation occurred.

**16.** Given that the Court has concluded that Stutes' did not violate the Plaintiff's constitutional rights, there is no basis for imposing supervisory liability on Prindle for Stutes' actions.

governmental entity can be held liable for the torts committed by its employees under only five circumstances, to wit: the negligent operation of a motor vehicle, the negligent performance of an act in connection with a proprietary function, the failure to keep public roads open and free from nuisance, the failure to keep public buildings and grounds free from physical defects, and where liability is expressly imposed by other provisions in the Ohio Revised Code.[17] Since none of those exceptions is remotely applicable, liability cannot be imposed upon Xenia for the state law torts allegedly committed by Coy and Stutes. Accordingly, the Court sustains the Xenia Defendants' Motion for Summary Judgment (Doc. # 78), to the extent that, with that motion, Xenia seeks summary judgment on the Plaintiff's state law claims.

Based upon the foregoing, the Court sustains the Xenia Defendants' Motion for Summary Judgment (Doc. # 78), in its entirety.[18]

As a result of this Decision, the only claims remaining in this litigation are Plaintiff's § 1983 claim against Coy, alleging that he used excessive force in violation of the Fourth Amendment; Plaintiff's state, common law claim of assault and battery against Coy; and Plaintiff's state, common law claim of false arrest against Coy and Stutes.

---

**17.** Although the Plaintiff has not opposed this branch of the Xenia Defendants' Motion for Summary Judgment (Doc. # 78), he has alleged with his Eighth Claim for Relief that § 2744.02(B) is unconstitutional because it arbitrarily distinguishes between proprietary and governmental functions. Even if that statutory distinction between the two types of functions performed by a governmental entity could be considered unconstitutional, it is apparent that the Plaintiff has not suffered an injury, as a result of that legislative line drawing. Section 2744.02(B) is applicable to both proprietary and governmental functions, the only difference being that liability can be imposed when an employee acts negligently when performing a proprietary function. Herein, the Plaintiff seeks to impose liability on Xenia for the *intentional* tort allegedly committed by Coy and Stutes. Ohio courts have held that § 2744.02(B) does not permit liability to be imposed upon a municipality for the intentional torts committed by its employees. *See e.g., Abdalla v. Olexia,* 1999 WL 803592 (Ohio App.1999); *Ellithorp v. Barberton City Sch. Dist. Bd. of Ed.,* 1997 WL 416333 (Ohio App.1997).

**18.** Given that ruling, the Court overrules, as moot, the Xenia Defendants' Motion to Compel Discovery (Doc. # 77).